UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 15-17100-EPK
                                                          Chapter 11 (Small Business)

GENARO'S CORPORATION
EIN #65-0677830

_____Debtor._____/


[1]**MODIFIED CHAPTER 11 PLAN OF
REORGANIZATION PROPOSED BY
GENARO'S CORPORATION**


August 25, 2016

Aramis Hernandez, Esq.
FBN 62205
Miami Legal Center, LLC
139 NE 1st Street, Suite 600
Miami, FL 33132
Telephone: (305) 374-7744
Facsimile: (305) 374-2224
info@MiamiLegalCenter.com

**ATTORNEYS FOR DEBTOR**

---

[1] This Modified Plan only amends the treatment of Class One (1) creditor, C and I Fund LLC's secured claim.

# DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Debtor-in-Possession, Genaro's Corporation, (the "Debtor" and/or "GC"), hereby proposes the following Plan of Reorganization pursuant to 11 U.S.C. § 1121(a).

## ARTICLE I
### DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"*Actions*" shall mean all actions that a Trustee or Debtor-in-Possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

"*Administrative Claim*" shall mean a Claim for payment of costs or expenses of administration specified in §§ 503(b) and 507(a)(1) of the Bankruptcy Code, incurred after the Petition Date through the Confirmation Date, including without limitation: (i) the actual, necessary costs and expenses of preserving the Debtor's estate incurred after the Petition Date; (ii) compensation for legal, accounting and other services and reimbursement of expenses awarded pursuant to §§ 330(a) or 331 of the Bankruptcy Code; and, (iii) all fees and charges assessed against the Debtor's estate pursuant to § 1930 of Title 28 of the United States Code.

"*Administrative Claims Bar Date*" shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims. To date, the Court has not established an Administrative Claims Bar Date.

"*Administrative Claimant*" shall mean the holder of an Administrative Claim.

"*Affiliate*" shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in § 101(2) of the Code, if such Person was a debtor in a case under the Code.

"*Allow*," "*Allowed*," "*Allowance*" or words of similar meaning shall mean with respect to a Claim against the Debtor's estate: (i) that no objection has been interposed within the applicable period of limitation fixed by this Plan or by the Bankruptcy Court and that such period of limitation has expired; or (ii) that the Claim has been allowed for purposes of payment by an order of the Bankruptcy Court that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending.

"*Allowed Amount*" shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by

the Code or  Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the  Court which has become a Final Order, if an objection has been interposed within the applicable  period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee  Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest  accrued on such Claim after the Filing Date.

"*Allowed Claim*" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined, by final, non-appealable order, in such Allowed Amount.

"*Allowed Equity Interest*" shall mean any Equity Interest, which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

"*Allowed General Unsecured Claim*" shall mean an Allowed Claim, not entitled to priority, which arose or which is deemed to have arisen prior to the filing of the Petition commencing this Case and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Case pursuant to an agreement approved by the Bankruptcy Court.

"*Allowed Priority Tax Claim*" shall mean an Allowed Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under § 507(a)(8) of the Code.

"*Allowed Secured Claim*" shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under § 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

"*Allowed Secured Tax Claim*" shall mean an Allowed Claim of a taxing authority for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non- bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under § 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the Claimant's interest in the  Debtor's interest in the property or to the extent of the amount subject to such setoff as the case  may be.

"*Allowed Unsecured Priority Claim*" shall mean an Allowed Claim that is entitled to priority (other than a Priority Tax Claim or a Priority Wage Claim) under § 507 of the Code.

"*Allowed Unsecured Priority Wage Claim*" shall mean an Allowed Claim that is entitled to priority under § 507(a)(4) of the Code.

"*Article*" shall mean one of the numbered Articles of the Plan.

"*Assets*" shall mean all of the right, title, and interest of the Debtor in and to Property of

the Estate, whether tangible or intangible.

"***Assumed Contract***" shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the pasties) that is assumed by the Debtor pursuant to the Plan.

"***Assumed Contract Claims***" shall mean the Executory Contract claims that are assumed by the Debtor pursuant to the Plan, as listed in the Assumption List.

"***Avoidance Actions***" shall mean the Actions pursuant to Chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to §§ 542-553 of the Code.

"***Bankruptcy Code***" (the "Code") shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code, which governs the Chapter 11 Case of the Debtor.

"***Bankruptcy Court***" (the "Court") shall mean the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding arising in or related to the Chapter II Case.

"***Bankruptcy Rules***" (the "Rules") shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida), as now in effect or hereafter amended. "Bar Date" shall mean the deadline established by the Bankruptcy Court for filing proofs of claim in the Case.

"***Business Day***" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in West Palm Beach, Florida are authorized or required to close.

"***Cash***" shall mean legal tender of the United States of America.

"***Causes of Action***" shall mean any and all causes of action to recover funds for the benefit of the estate.

"***Chapter 11 Case***" or this "***Case***" shall mean the proceeding under Chapter I1 of the Bankruptcy Code for the reorganization of the Debtor under 15-17100-EPK, pending before the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division.

"***Claim***" shall have the meaning provided for such term in § 101(5) of the Code, meaning (a) ) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"***Claimant***" shall mean the holder of a Disputed Claim or Allowed Claim, as the case may be.

"***Claimholder***" shall mean a creditor of the estate whose claim is not a Disputed Claim and who is entitled to vote on the Plan.

"***Claims Bar Date***" shall mean July 20, 2015, the last date for creditors, other than a governmental unit, and holders of Equity Interests to file Proofs of Claims or Equity Interests in this Case.

"***Class***" shall mean a group of Claims or Interests consisting of Claims or Interests, which are substantially similar to each other as classified pursuant to the Plan in accordance with § 1122 of the Bankruptcy Code.

"***Class 1***" shall mean the Allowed Secured Claim of C and I Fund, LLC

"***Class 2***" shall mean the Allowed Secured Claims of General Capital Investments II, LLC

"***Class 3***" shall mean the Allowed Secured Claims of Florida Department of Revenue

"***Class 4***" shall mean the Allowed Secured Claims of Palm Beach County Tax Collector

"***Class 5***" shall mean the Allowed Secured Claims of Tax Certificate Holder Adam Herbert Writer

"***Class 6***" shall mean the Allowed Secured Claims of Associated Grocers of Florida, Inc.

"***Class 7***" shall mean the Allowed Secured Claim of the City of West Palm Beach

"***Class 8***" shall mean the Allowed General Unsecured Claims

"***Class 9***" shall mean the Allowed General Unsecured Claims of $1,000 or less

"***Class 10***" shall mean the Allowed Equity Interests.

"***Collateral***" shall mean any property or interest in Property of the Estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

"***Confirmation***" shall mean the entry by the Court of the Confirmation Order.

"***Confirmation Date***" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"***Confirmation Hearing***" shall mean the hearing held by the Court pursuant to § 1128 of the Code on the confirmation of the Plan, at which time the Court will consider objections to confirmation, if any.

"***Confirmation Order***" shall mean the order entered by the Court confirming the Plan pursuant to § 1129 of the Code, which shall contain such provisions as the Proponents desire and shall otherwise be in a form and substance satisfactory to the Proponents.

"***Court***" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"***Creditor***" shall mean any person or entity that is a holder of a Claim or Equity Interest, including but not limited to, Administrative Claimants and Claims of the kind specified in §§ 502(b), 502(h), and 502(1) of the Code, and such person's heirs, successors, assigns, executors

and personal representatives.

"***Debtor***" or "***Debtor-in-Possession***" shall mean Genaro's Corporation.

"***DIP Account(s)***" shall mean the bank accounts) set up and maintained by the debtor-in-possession in approved depositories and which accounts are property of the bankruptcy estate.

"***Disputed Amount***" shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

"***Disputed Claim***" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"***Disputed Claims Reserve***" shall mean funds to be held by the Debtor in respect of a Disputed Claim, pending the entry of a Final Order on the allowance or disallowance of such Disputed Claim.

"***Distribution***" shall mean funds to be paid to holders of Claims.

"***Distribution Date***" shall mean the dates upon which Distributions may be made pursuant to the Plan.

"***Docket***" shall mean the docket maintained in this Case by the clerk of the Court.

"***Effective Date***" shall mean the later of the thirtieth (30th) day after the entry of the Confirmation Order, or in the event of an appeal, absent the entry of a stay, the Effective Date shall be the thirtieth (30th) day after the entry of the Confirmation Order, In the event the Confirmation Order is stayed pending appeal, the Effective Date shall be the thirtieth (30th) day after the entry of an Order either lifting the stay or affirming the Confirmation Order.

"***Equity Interest***" shall mean any ownership or equity interest in the Debtor, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtor.

"***Estate***" shall mean the Estate created in this Case pursuant to § 541 of the Code.

"***Executory Contract***" shall mean a contract or unexpired lease to which any of the Debtors is a party and that is executory within the meaning of § 365 of the Code.

"***Face Amount***" shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

"***Fee Request***" shall mean an application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the

Rules or other applicable provision of the Code or the Rules.

"***Filing Date***" shall mean April 20, 2015.

"***Final Decre***e" shall mean the final decree entered by the Court after the effective Date and pursuant to § 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"***Final Order***" shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

"***General Unsecured Claim***" or "***Unsecured Claim***" shall mean any Claim against the estate of the Debtor other than an Administrative Claim, a Secured Claim, or an Unsecured Priority Claim.

"***Impaired***" shall mean an Allowed Claim or Equity Interest that is Impaired within the meaning of § 1124 of the Code.

"***Insider(s)***" shall mean those Persons defined in § 101(31)(B) of the Code.

"***Late Filed Claim***" shall mean a Claim filed after the Bar Date.

"***Lien***" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

"***Person***" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"***Petition Date***" shall mean the date that the voluntary petition was filed in this Case, which date was April 20, 2015.

"***Plan***" shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

"***Plan Documents***" shall mean the documents to be filed as a part of the Plan Supplement.

"***Plan Supplement***" shall mean a document to supplement the Plan, if necessary.

"***Post-Petition Interest***" shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

"*Pre-Petition*" shall mean prior to the Petition Date.

"*Priority Tax Claim*" shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under §507(a)(8) of the Code.

"*Pro Rata*" shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Claim or Disputed Equity Interest upon final resolution of the dispute.

"*Professional*" shall mean any professional employed in these Cases pursuant to §§ 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

"*Property of the Estate*" shall mean the property defined in § 541 of the Code.

"*Proponent*" shall mean the Debtor.

"*PSI*" shall be Protection Services, Inc.

"*Rejected Contract*" shall mean an Executory Contract that is rejected at any time during this Case or pursuant to the Plan.

"*Reorganized Debtor*" shall mean Genaro's Corporation, as reorganized, on or after the Effective Date.

"*Schedules*" or "*Amended Schedules*" shall mean the Schedules of assets and liabilities originally filed by the Debtor with the Court and as may be amended from time to time.

"*Section*" shall mean a numbered subsection of any Article of the Plan.

"*Secured Claim*" shall mean a Claim pursuant to § 506(a) secured by a Lien on property in which the Estate has an interest or that is subject to set-off under § 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"*Secured Creditor*" shall mean the holder of a Secured Claim.

"*Substantial Consummation*" shall mean that the Plan shall be deemed to be substantially consummated under §§ 1101 and 1127(b) of the Code.

"*Undefined Terms*" shall mean a term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein.

"*Unimpaired*" shall mean an Allowed Claim or Allowed Equity Interest that is not Impaired within the meaning of § 1124 of the Code.

"*United States Trustee*" shall mean the Assistant United States Trustee for the Southern

District of Florida.

"***Unsecured Claim***" shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

"***Unsecured Creditor***" shall mean the holder of an Unsecured Claim.

"***Unsecured Priority Claims***" shall mean any Claim entitled to priority under § 507(a) of the Code.

"***U.S. Trustee's Fees***" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

### *"Rules of Construction and Interpretation"*

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a)      The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b)      Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c)      All articles, sections, and exhibits or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS;
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS
## <u>AND UNITED STATES TRUSTEE'S FEES</u>

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

2.1. **Allowed Administrative Claims.**

     **a.**     **Ordinary Course Claims.**

Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in full and performed by the Reorganized Debtor in the ordinary course of business consistent with past practices and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

     **b.**     **Professional Fees and Expense Claims.**

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to §§ 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees and Expenses Claims**"). All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date pursuant to § 330 of the Code and Rule 2016 within fourteen (14) days after approval of the Plan, or as set forth by order of the Court.

The time for filing objections to applications for allowance and payment of Professional Fees and Expenses, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set forth in the Confirmation Order or other order of the Court.

Notwithstanding anything herein to the contrary, all Professional Fees and Expenses that are awarded by the Court shall become Allowed Administrative Claims and shall be paid in full in Cash on the later of the Effective Date of the Plan, the date on which such Professional Fees and Expense Claim becomes an Allowed Administrative Claim by Final Order of the Court or as soon thereafter as is reasonably practicable, or by written agreement of the parties.

To date, the Debtor and third parties have paid $49,409.43 for attorney's fees and costs, specifically the debtor's principle has paid $5,000.00 to Aramis Hernandez, Esq., of Miami Legal Center, LLC and $44,409.43 to Debtor's previous counsel Markarian Frank White-Boyd & Hayes. Additional fees due at Confirmation are estimated to be no more than $10,000, subject to the possibility that a contested proceeding may increase the fees. Further fees may be incurred in litigation the General Capital Adversary Proceeding post-confirmation, if the matter is not settled, and such fees will be funded by the Debtor's Principal individually.

### c.    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive deferred cash payments over a period not to exceed five years following the Order for Relief, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, except to the extent that a holder of an Allowed Priority Tax Claim under § 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment.  Prior to the Effective Date, the Debtor shall have the right, in its sole discretion, to prepay at any time, in whole or in part, the Allowed Priority Tax Claim without premium or penalty of any sort or nature.

Priority tax claims for the Palm Beach County Tax Collector are $555 for business tax receipts.  This claim will be paid in full, in a lump sum payment, on the Effective Date.

Priority tax claims for the Internal Revenue Service (claim #5) are $113,436.17, which is subject to dispute and a forth coming claim objection. Final terms for payment to be provided by further order of the court.

### d.    Administrative Claims of Governmental Entities

All governmental entities seeking an award by the Court of Allowed Administrative Expense Claims incurred during the Chapter 11 case shall file an application for Administrative Expense within fourteen (14) days prior to the date of the confirmation hearing, or as set forth by order of the Court.

The time for filing objections to applications for allowance and payment of Administrative Expense Claims, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set forth in the Confirmation Order or other order of the Court.

Notwithstanding anything herein to the contrary, all Administrative Claims that are awarded by the Court shall become Allowed Administrative Claims and shall be paid in full in Cash on the later of the Effective Date of the Plan, the date on which such Administrative Expense Claim becomes an Allowed Administrative Claim by Final Order of the Court or as soon thereafter as is reasonably practicable, or by written agreement of the parties.

At this time, the Debtor owes an estimated $32,000 for post-petition sales tax, subject to the filing and approval of an Administrative Expense Claim.

### e.    United States Trustee Fees

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtor shall be as follows:

"*Class 1*" shall mean the Allowed Secured Claim of C and I Fund, LLC

"*Class 2*" shall mean the Allowed Secured Claims of General Capital Investments II, LLC

"*Class 3*" shall mean the Allowed Secured Claims of Florida Department of Revenue

"*Class 4*" shall mean the Allowed Secured Claims of Palm Beach County Tax Collector

"*Class 5*" shall mean the Allowed Secured Claims of Tax Certificate Holder Adam Herbert Writer

"*Class 6*" shall mean the Allowed Secured Claims of Associated Grocers of Florida, Inc.

"*Class 7*" shall mean the Allowed Secured Claim of the City of West Palm Beach

"*Class 8*" shall mean the Allowed General Unsecured Claims.

"*Class 9*" shall mean the Allowed General Unsecured Claims of $1,000 or less.

"*Class 10*" shall mean the Allowed Equity Interests.

| Class | Description | Status | Voting Status |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of C and I Fund, LLC | Impaired. | Yes. |
| Class 2 | Allowed Secured Claim of General Capital Investments II, LLC | Impaired. | Yes. |
| Class 3 | Allowed Secured Claim of the Florida Department of Revenue | Impaired. | Yes. |
| Class 4 | Allowed Secured Claims of Palm Beach County Tax Collector | Unimpaired. | No. |
| Class 5 | Allowed Secured Claim of Tax Certificate Holder Adam Herbert Writer | Unimpaired. | No. |
| Class 6 | Allowed Secured Claim of Associated Grocers of Florida, Inc. | Unimpaired | No. |
| Class 7 | Allowed Secured Claim of the City of West Palm Beach | Impaired | Yes. |
| Class 8 | Allowed General Unsecured Claims | Impaired | Yes. |
| Class 9 | Allowed General Unsecured Claims of $1,000 or less | Impaired | Yes. |

| Class 10 | Allowed Untimely Filed General Unsecured Claims | Unimpaired | No. Deemed accepted |
|----------|------------------------------------------------|------------|---------------------|
|          |                                                |            |                     |

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 4.1   Class 1. Allowed Secured Claim of C and I Fund, LLC

(a)    Description. Class 1 consists of the Allowed Secured Claim of C and I Fund, LLC, which is secured by commercial real property located at 1000 36th Street, West Palm Beach, FL, 33407.

(b)    Treatment. C and I Fund, LLC's Allowed Secured Claim shall be entitled to payment of the principal amount of $1.5 million, minus monthly adequate protection payments already made to C and I Fund LLC, and the remainder of C and I Fund, LLC's claim to be treated as a general unsecured claim. The terms of the secured loan shall be for ten (10) years interest only with a Balloon Payment due in month 120. More specifically, the yearly interest on the loan is twelve and one-half percent (12.5%) for the first twelve (12) months, and fifteen percent (15%) for one-hundred seven (107) months thereafter, with a balloon payment due in month 120. The Debtor began making monthly adequate protection payments on June 1, 2015 in the amount of $12,657.85 per month, which will be applied to principal and interest per the loan documents.  Debtor will escrow property taxes and insurance. C and I Fund, LLC shall retain its Lien against the Property until the Allowed Secured Claim is paid in full.

(c)    Impairment. The Class 1 Claim is Impaired and the Class 1 Claimholder is entitled to accept or reject the Plan.

### 4.2   Class 2. Allowed Secured Claim of General Capital Investments II, LLC

(a)    Description. Class 2 consists of the Allowed Secured Claim of General Capital Investments II, LLC, which are secured by commercial real property located at 1000 36th Street, West Palm Beach, FL 33407 and personal property of the debtor (the "Property").

(b)    Treatment. General Capital Investments II, LLC's ("GCI") Allowed Secured Claim shall receive the amount of their allowed claim amortized over thirty years at 4.5% annual interest, with a balloon payment due in year 10.

(c)    Impairment. The Class 2 Claim is Impaired and the Class 2 Claimholder is entitled to vote to accept or reject the Plan.

### 4.03   Class 3. Allowed Secured Claim of the Florida Department of Revenue

(a)    Description. Class 3 consists of the Allowed Secured Claim of the Florida Department of Revenue in the amount of $33,094.98 (amended claim #4).

(b)    Treatment.        Pursuant to a deferred prosecution agreement, the Debtor's Principal, who is jointly and severally liable for the claim, has been paying $1500 per month since April 15, 2015.  The amount of the Allowed Claim, less payments already received during  the case, shall be paid in full at the statutory rate of interest, in regular monthly installments of $1500 per month until the claim is paid in full.  (It is estimated that claim shall be paid in full  within 18 months).

(c)      Impairment. The Class 3 Claim is Impaired and the Class 3 Claimholder is  entitled to vote to accept or reject the Plan.

### 4.4  **Class 4. Allowed Secured Claim of Palm Beach County Tax Collector**

(a)      Description. Class 4 consists of the Allowed Secured Tax Claims of Palm Beach  County Tax Collector (Claim #2), in the amount of $2,355.24.

(b)      Treatment. The Allowed Secured Tax Claimant shall be entitled to retain its Lien until the Claim is paid in full.  They shall receive monthly payments of principal and interest, with interest accruing at the Statutory Rate, paid in 12 equal monthly installments, commencing 12 months after the effective date.

(c)      Impairment. The Class 4 Claims are Unimpaired and Class 4 Claimholders are not  entitled to vote to accept or reject the Plan

### 4.5  **Class 5. Allowed Secured Claim of Adam Herbert Writer**

(a)      Description. Class 5 consists of the Allowed Secured Claim of Tax Certificate Holder Adam Herbert Writer, who purchased the real estate tax certificate for the Debtor's 2014  property taxes on May 31, 2015.  The certificate amount is $55,541.80 with an interest rate bid  of .25%.

(b)      Treatment.  The Debtor shall redeem the tax certificate pursuant to the Florida  Statutes, no later than January 1, 2017.

Confirmation of the Debtor's Plan shall not act as a bar to the tax certificate holder from enforcing his rights under Florida law to apply for a tax deed no earlier than two years of the purchase of the certificate, if not timely redeemed, but it shall not be interpreted as allowing the tax certificate holder to apply for a tax deed at a time earlier than that provided for in the Florida Statutes.  The earlier deadline included in the Plan is for the benefit of the mortgage holder, and is not intended to confer additional rights upon the tax certificate holder.

(c)      Impairment. The Class 5 Claims are Unimpaired and Class 4 Claimholders are not  entitled to vote to accept or reject the Plan.

### 4.6  **Class 6. Allowed Secured Claim of Associated Grocers of Florida, Inc.**

(a)      Description. Class 6 consists of the Allowed Secured Claim of Associated Grocers of Florida, Inc. ("AGF"), during the pendency of this case the Debtor and AGF agreed that the Debtor would redeem the stocks issued so that the Debtor would receive $14,666.22 in inventory credit, which represented the set-off balance of the Debtor's paid in investment of $48,230.12 (default rate), minus $33,563.90 which was owed to AGF.

(b)      Treatment. There is no treatment for this claim under the Plan.

(c)      Impairment. The Class 6 Claims are Unimpaired and Class 6 Claimholders are not  entitled to vote to accept or reject the Plan.

### 4.7  Class 7. Allowed Secured Claim of the City of West Palm Beach

(a)　　Description. Class 7 consists of the Allowed Secured Claim of the City of West Palm Beach (claim #9), for fines arising from a Code Enforcement Lien in the amount of $48,400.

(b)　　Treatment.  The claim shall be paid in equal monthly installments, at 3% interest,  over a period of 60 months, commencing within 30 days of the Effective Date.

(c)　　Impairment. The Class 7 Claims are Impaired and Class 7 Claimholders are  entitled to vote to accept or reject the Plan.

### 4.8  Class 8. Allowed General Unsecured Claims

(a)　　Description. Class 8 consists of the Allowed General Unsecured Claims in the  aggregate amount of approximately $1,233,388.48.

(b)　　Treatment. Allowed General Unsecured Claims shall receive total distributions equal to approximately 1% of the Allowed Claim amount over a period of five years. Debtor shall  make payments without interest on a monthly basis. Payments shall commence within thirty (30)  days of an entry of an order confirming the Debtor's Chapter 11 Plan of Reorganization.

(c)　　Impairment. The Class 8 Claims are Impaired and Class 8 Claimholders are  entitled to vote to accept or reject the Plan.

### 4.9  Class 9. Allowed General Unsecured Claims of $1,000 or less

(a)　　Description. Class 9 consists of Allowed General Unsecured Claims of $1,000 or  less, as an administrative convenience class pursuant to §1122(b) of the Code, totaling approximately $3,207.47.

(b)　　Treatment.  Allowed General Unsecured Claims of $1,000 or less Class 8 Claimholders shall be entitled to a one time lump sum payment of approximately five (5%) percent  of its claim within six months of the Effective Date.  Claimants shall not be entitled to interest.

(c)　　Impairment. The Class 9 Claims are Impaired and Class 9 Claimholders are entitled to vote to accept or reject the Plan.

### 4.10  Class 10. Allowed Equity Interests

(a)　　Description. Class 10 consists of the Allowed Equity Interests, which includes interest in any share of preferred stock, common stock or other instrument evidencing ownership interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

(b)　　Treatment. The Debtor proposes that Genaro Espinal who has 100% interest in the Debtor retains his interests.

(c)    Impairment. The Class 11 Claims are Unimpaired; however, Class 10 Claimholders are not entitled to vote to accept or reject the Plan, as Class 10 Claimholders shall be deemed to have accepted the Plan.

## ARTICLE V
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS. CLAIMS AND EQUITY INTERESTS

### 5.1  Voting of Claims and Equity Interests

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Claims in Classes 1, 2, 3, 7, 8, and 9, are Impaired under this Plan.  The Claims in Classes 4, 5, and 6 are Unimpaired and thus are conclusively presumed to have accepted the Plan.  Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to accept that plan and, therefore, also not entitled to vote on it.

Any Ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

### 5.2  Method of Distribution Under the Plan

(a)    Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or proof of claim as of the Distribution Record Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day,

(d)    No payment of Cash less than Ten 00/50 Dollars ($10.00) shall be made by the Reorganized Debtor to any holder of a Claim unless a request therefore is made in writing to the Reorganized Debtor, or unless the Distribution is a final Distribution.

(e)    When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of 1/2 or greater shall be rounded to the next higher whole number and fractions of less than 1/2 shall be rounded to the next lower whole number.

(f)    Any distributions of Cash or other property under the Plan that is unclaimed for a period of six (6) months after the Distribution Date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(g)    Unless otherwise provided herein, all initial Distributions and deliveries to be

made on the Effective Date shall be made on the initial Distribution Date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

### 5.3    Distributions Withheld for Disputed General Unsecured Claims

**(a)    Establishment and Maintenance of Reserve**

On the initial Distribution Date and each subsequent Distribution Date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 5.07 of the Plan (the "Disputed Claims Reserve").

**(b)    Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor.

**(c)    Distributions Upon Allowance of Disputed General Unsecured Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor within ninety (90) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

**(d)    No Surplus Distributions to Holders of Allowed General Unsecured Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

**(e)    Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

### 5.4    Procedures for Allowance or Disallowance of Disputed Claims

**(a)    Objections to and Resolution of Administrative Claims and General Unsecured Claims**

Except as to applications for allowance of compensation and reimbursement of expenses under §§ 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; provided, however, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court. Unless otherwise ordered by the Court, the Debtor or the Reorganized

Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than thirty (30) days after the Effective Date or such later date as may be approved by the Court. The Debtor or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

**(b)    No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

**(c)    Disallowed Claims**

All Claims held by Persons against whom the Debtor or Reorganized Debtor has commenced an Action under §§ 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to § 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

### 5.5    **Disbursing Agent**

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all Distributions required to be distributed under the applicable provisions of the Plan. Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan- Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor. The Reorganized Debtor shall hold all reserves and accounts pursuant to the Plan, the Disputed Claims Reserve.

### 5.6    **Setoffs and Recoupment**

The Debtor may, but shall not be required to, set off (pursuant to the provisions of §§ 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

**5.7**   **Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, any Claimholder with a Disputed Claim is not entitled to vote on the Plan unless said Claimholder has its Claim estimated by the Court. The Debtor and the Reorganized Debtor may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to §502(c) of the Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**5.8**   **No Recourse**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claimholder shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under § 502(j) of the Code.  THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**5.9**   **Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claimholder has obtained prior Court authorization for the filing of such amendment.

**5.10**   **Postpetition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, Post-Petition Interest shall not accrue on or after the Petition Date on account of any Claim.

5.11  **Unclaimed Funds**

Any funds unclaimed for the period described in paragraph 5.02(g) above shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Court pursuant to Local Rule 3011-1(B).

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1.  **Assumption or Rejection of Executory Contracts and Unexpired Leases**

**a)  Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Reorganized Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date however, that the Debtor or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any Executory Contract or unexpired lease therefrom or add any Executory Contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.

**(b)  Insurance Policies**

Each of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

**(c)  Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VI of the Plan and (ii) the approval, pursuant to §§ 365(a) and 1123(6)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

6.2. **Cure of Defaults**

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtor by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with § 365(6)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

### 6.3. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtor or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease or (ii) notice of entry of the Confirmation Order.  Any Claim not filed within such time will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor and its property. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

6.4. **Indemnification Obligations**

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Effective Date.

6.5. **Compensation and Benefit Programs**

Except as provided in the Plan, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to §§ 365(a) and 1123(b)(2) of the Code; provided, however, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans,

policies, and programs in accordance with the terms thereof.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION
## <u>AND EFFECT OF CONFIRMATION OF PLAN</u>

### <u>7.1</u>  **General**

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### <u>7.2</u>  **The Reorganized Debtor**

Except as otherwise provided in the Plan, on the Effective Date of the Plan, all Assets of the Debtor shall be vested in the Reorganized Debtor. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

### <u>7.3</u>  **Funding**

Funds to be used to make cash payments under the Plan shall derive from the operation of the Debtor's business in the ordinary course prior to and after the Effective Date. Currently, the Debtor is cash flow positive and the Debtor asserts that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies 11 US-C. § 1129(a)(11).

In order to assist in funding the Debtor's business operations under the Plan, the Debtor may retain its cash on hand, the funds in its bank accounts, and may retain amounts received from accounts receivable to pay accounts payable.

### <u>7.4</u>  **Effectiveness of Securities, Instruments and Agreements**

On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### <u>7.5</u>  **Corporate Action**

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of the Debtor or the Reorganized Debtor, including, without limitation, the authorization to issue or cause to. be issued new common stock and documents relating thereto, the adoption of the Reorganized Debtor's Certificate of Organization, the Reorganized Debtor's Bylaws, and the election or appointment, as the case may, of directors and officers of the Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the laws of the State of Florida, and other applicable general corporation law of the jurisdiction in which the Reorganized Debtor is incorporated, without any requirement or further action by the Board of Directors of the Debtor or the Reorganized Debtor. On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall, if required, file its amended certificate of organization with the secretary of the state of the state in which the Reorganized Debtor is organized.

### 7.6 __Approval of Agreements__

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

### 7.7 __Effective of Instruments and Agreements__

On the Effective Date, all agreements entered into or documents issued pursuant to the Plan, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to be effective simultaneously,

### 7.8 __No Change of Control__

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 7.9 __Continued Corporate Existence__

The Reorganized Debtor shall continue to exist after the Effective Date with all powers of an S corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law; and, following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order. After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules. Genaro Espinal, the Debtor's president, shall continue to manage the Reorganized Debtor. Genaro Espinal is an insider of the Debtor and shall retain the identical compensation he received prior to filing.

### 7.10 __Term of Bankruptcy Injunction or Stays__

All injunctions or stays provided for in the Case under §§ 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 7.11 __Revesting of Assets__

Except as otherwise provided in the Plan, pursuant to § 1141 of the Code, the property of the Estate of the Debtor, including, without limitation, the Actions shall revest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and Equity Interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

### 7.12 __Causes of Action__

As of the Effective Date, pursuant to § 1123(b)(3)(3) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession, including, without limitation, actions under §§ 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Reorganized Debtor, and the Reorganized Debtor shall have the authority to commence and prosecute such Actions for the benefit of the Estate. Specifically, the Reorganized Debtor, shall continue to prosecute any Action pending on the Effective Date. Further, § 547 of the Code

enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of the petition date, which enables the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value.

The Debtor has reviewed all transfers in the aggregate of $6,255.00 or more to a particular transferee made during the ninety (90) days prior to the filing and believes that all of these transfers were made in the ordinary course of business, and thus, will not seek recovery of any such transfer.

### 7.13 **Discharge of Debtor**

The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Effective Date, against the Debtor and the Debtor in Possession, the Estate, or any of the assets or properties under the Plan. Except as otherwise provided herein, (i) on the Effective Date, all such Claims against and Equity Interest in the Debtor shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

### 7.14 **Injunction Related to Discharge**

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (ill) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.

### 7.15 **Release by Holders of Impaired Claims.**

This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that

holders of Claims against and Equity Interests in the Debtor may have against the Debtor. In consideration of the obligations of the Debtor, the Reorganized Debtor, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against or Equity Interest in the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter II case or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 7.14, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.

### 7.16  Injunction Against Interference with the Plan

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

## ARTICLE VIII
## CONFIRMATION AND EFFECTIVENESS OF THE PLAN
## AND FUNDING AND FEASIBILITY OF THE PLAN

### 8.1  Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 8.04 of the Plan;

(i)      The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor, the Reorganized Debtor, and its respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in § 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii)      All exhibits to the Plan, including those to be contained in the Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor and approved by the Court.

### 8.2  Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 8.04 of the Plan:

(i)      The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(ii)      The statutory fees owing to the United States Trustee shall have been paid in full;

(iii)      All other actions, authorizations, filings consents and regulatory approvals

required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### 8.3   **Effect of Failure of Conditions**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to § 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

### 8.4   **Waiver of Conditions**

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 8.02 of the Plan. The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

### 8.5   **Best Interests Test and Liquidation Analysis**

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of unsecured creditors and equity security holders would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from Debtor's assets if the Chapter 11 Case was converted to a Chapter 7 case under the Bankruptcy Code and the assets were liquidated by a Trustee in bankruptcy (the "Liquidation Value" of such assets). The Liquidation Value would consist of the net proceeds from the disposition of Debtor's assets and would be augmented by any cash held by Debtor.

As detailed in the liquidation analysis that will be attached as Exhibit "C" to the Disclosure Statement, the Debtor's Liquidation Value would not allow holders of Allowed General Unsecured Claims to receive any distribution.

The Debtor has compared the Claims in the Plan with the liquidation analysis that will be attached to the Disclosure Statement, and believes that distributions under the Plan will provide more recovery to holders of Allowed Claims, since the Debtor's Plan proposes to pay the holders of Allowed General Unsecured Claims distributions equal to approximately 1% of their Allowed Claims, Creditors shall receive more favorable treatment under the Debtor's Plan than through a

Chapter 7 liquidation.

# ARTICLE IX
## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)     to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)     to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors or any other party in interest with standing to do so, pursuant to §§ 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Code;

(h)     to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331, and 503(b) of the Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)     to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)     to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)     to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)     to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under § 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)     to hear any other matter not inconsistent with the Code; and

(q)     to enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### 10.1   Effectuating Documents and Further Transactions.

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 10.2   Exemption from Transfer Taxes.

Pursuant to § 1146(c) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new common stock, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed, in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 10.3   Authorization to Request Prompt Tax Determinations

The Reorganized Debtor is authorized to request an expedited determination under § 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 10.4   Exculpation

Subject to the occurrence of the Effective Date, neither the Debtor nor the Reorganized Debtor, or any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (1) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel

with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

### 10.5   Injunction Relating to Exculpation

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtor, the Reorganized Debtor and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

### 10.6   Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 10.7   Payment of Statutory Fees

The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 10.8   Amendments or Modifications of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with § 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with § 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of §§ 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

### 10.9   Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and

operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.10    **Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

### 10.11    **Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 10.12    **Notices**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Reorganized Debtor:

Genaro's Corporation
Attention: Genaro Espinal
1000 36th Street, West Palm Beach, FL 33407

With a copy to:
Miami Legal Center, LLC
Attention: Aramis Hernandez, Esq.
139 NE 1st Street, Suite 600, Miami, FL 33132

### 10.13    **Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 10.14    **Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be

subject to any such withholding and reporting requirements.

### 10.15 **Section 1125(e) of the Code**

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtor and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 10.16 **Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 10.17 **No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 10.18 **Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

### 10.19 **Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 10.20 **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under §§1101 and 1127(b) of the Code.

### 10.21 **Final Decree**

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 10.22 **Inconsistency**

In the event of any inconsistency between the Plan, any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

10.23  **No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

10.24  **Successors and Assigns**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

10.25  **Headings**

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

10.26  **No Penalty for Prepayment**

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

10.27  **Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**10.25  Remedy of Defects**

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

### ARTICLE XI
### CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor and all creditors and all parties in interest and their successors and assigns in accordance with § 1141 of the Code.

**DEBTOR-IN-POSSESSION:**

GENARO'S CORPORATION

By: _____
Genaro Espinal, President

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing, this 25th day of August, 2016.

***I HEREBY CERTIFY*** *that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).*

**Respectfully submitted,**

Aramis Hernandez, Esq.
FBN 62205
Miami Legal Center, LLC
139 NE 1st Street, Suite 600
Miami, FL 33132
Tel.: (305) 374-7744 Fax: (305) 374-2224
info@MiamiLegalCenter.com

By:   */s/ Aramis Hernandez*
Aramis Hernandez, Esq.
Florida Bar. No. 62205